IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **RACHEL WINSETT,** | * |
| Plaintiff, | * |
| v. | Case No.: GJH-21-2932 |
| | * |
| **H&S RESOURCES CORPORATION,** **D/B/A AKATA GLOBAL** | |
| | * |
| Defendant. | |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Rachel Winsett brings this civil action against Defendant H&S Resources Corporation, doing business as Akata Global ("Akata"), under Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000(e), et seq., ("Title VII"), and the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't 20-601, et seq., ("MFEPA"), for redress of injuries allegedly suffered due to employment discrimination consisting of failure to promote and wage discrimination based on Plaintiff's sex. ECF No. 1. Pending before the Court is Defendant Akata's Partial Motion to Dismiss, ECF No. 25, Plaintiff's Motion for Leave to File Surreply, ECF No. 29, and Defendant's Motion to Withdraw as Attorney as to Jillian Hart. ECF No. 32. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Defendant's Partial Motion to Dismiss with respect to counts III and VI is denied and is found to be moot as to Count V. Plaintiff's Motion for Leave to File Surreply is also moot, and Defendant's Motion to Withdraw as Attorney as to Jillian Hart is granted.

I.     **BACKGROUND**[1]

    **A. Factual Background**[2]

Plaintiff alleges that she "began her employment with Akata as a General Clerk in September 2016 and became the General Clerk II in October 2018." ECF No. 1 at 3. She alleges that "although her formal title was 'General Clerk,' she served as the de-facto project manager, the top management position responsible for overseeing all the work at the U.S. Naval Research Laboratory, a large Naval base in Chesapeake Beach, Maryland." *Id.* Plaintiff alleges that she was paid $16.34 an hour, whereas "male project managers at Akata made as much as $144,000.00 a year." *Id.* at 2. Plaintiff furthermore states that "beginning on or about May 2017, the former Project Manager, Glenn Ratliff ("Ratliff"), a male, was out on medical leave for approximately six months, and during that time, she performed all of the Project Manager duties on her own, without any increase in compensation." *Id.* She goes on to allege that when "Ratliff returned from his medical leave, he delegated his duties to her and she continued to perform them without any increase in compensation, and at the times when he left the office at 2pm, she was expected to perform the Project Manager duties after he left." *Id.* Plaintiff alleges that "during the time Ratliff was in the office, he expressed sexist and misogynistic views of women in the workplace, and that even though he expected Plaintiff to perform the Project Manager duties, he allegedly told her that she needed to 'stay in her place as a woman clerk.'" *Id.*

In July of 2019, Plaintiff states that she "complained to HR that Ratliff would not allow her to advance beyond the position of General Clerk, despite the fact that she was doing the work

---

[1] Unless stated otherwise, all facts are taken from Plaintiff's Complaint or documents attached to and relied upon in the Complaint and are accepted as true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

2

of the Project Manager." She alleges that no corrective action was taken in response. *Id.* at 4. She also contends that she "complained to upper management about sex-based pay inequities she experienced, which included complaints to Keith McMorris ("McMorris"), the Chief People Officer, a male, and Akata's CEO." *Id.* at 12.

On January 27, 2020, Plaintiff alleges that "Ratliff was placed on administrative leave for using a racial slur against an African American Employee." *Id.* at 5. Thereafter, Plaintiff alleges that Akata "expected and instructed her to continue to perform the duties of the Project Manager without any increase in compensation," and she did so, "in addition to her duties as General Clerk II." *Id.* In the same month, Plaintiff alleges that Chief Operations Officer, Devin Scott ("Scott"), a male, "spoke to her about Ratliff's discriminatory actions." *Id.* Plaintiff states that she then "submitted a written complaint to Scott describing Ratliff's discriminatory actions and comments, including Ratliff's sexist conduct, where he asked her to wear red lipstick and continued to cat-call or harass her." Plaintiff states that she furthermore "complained to Scott about sex discrimination and efforts to deny her a promotion." *Id.* at 12. She also alleges that she reiterated her July 2019 complaint that Ratliff would never promote her to the Project Manager position. *Id.* at 5.

On or about February 7, 2020, Plaintiff states that Akata terminated Ratliff's employment, and that "he was not [terminated] for his sexist comments or discriminatory behavior directed towards Plaintiff." *Id.* Following Ratliff's termination, Plaintiff alleges that "Scott contacted Ronnie Tyrrell ("Tyrell"), a male, and asked him to temporarily fill in as Project Manager, despite the fact that Plaintiff had already been successfully performing the duties of Project Manager for years." *Id.* at 6. Plaintiff alleges that Tyrrell was previously a "maintenance worker for Akata" and that he "had absolutely no previous experience as a Project Manager." *Id.*

Subsequently, Plaintiff states that Scott instructed Plaintiff to "write a resume for Tyrrell, with the goal of Tyrrell permanently filling the Project Manager Position." *Id.*

In February 2020, Akata posted the official job opening for the Project Manager Position. *Id.* On February 11, 2020, Plaintiff alleges that she "spoke with McMorris about the open Project Manager Position she had been performing for years." *Id.* at 6–7. She alleges that McMorris told her "she should not apply for the position because he could not 'justify' the promotion for someone who was 'just a General Clerk.'" *Id.* Plaintiff alleges that Akata was aware of the fact that "she had been commendably performing the Project Manager duties, and that she had overseen the Naval Academy contract and the Naval Base on her own while Ratliff was out on medical leave, and even after he returned." *Id.* at 7.

On February 14, 2020, Plaintiff alleges that Nathan Duran ("Duran"), a male, received a call from Scott, "asking Duran to apply for the Project Manager position." *Id.* Plaintiff contends that "Duran did not have any previous experience as a Project Manager, and prior to being targeted for the promotion he was a 'Ceremonial Support Assistant' at Akata Global in the Navy Yard facility." *Id.* She contends that this role "only required a high school diploma and primarily involved setting up chairs and audio-visual equipment in conference rooms prior to meetings and other events." *Id.* Furthermore, Plaintiff states that his other experience with Akata was as a "grass cutter." *Id.* Plaintiff contends that Duran's resume, other than the two jobs mentioned, only listed "a high school physics award and work as a gymnastics instructor." *Id.* She further contends that Duran did not have an OSHA 30 Certification, which she held. *Id.* Plaintiff contends that Scott never called Plaintiff to apply for the position as he did with Duran. *Id.* at 8.

On February 24, 2020, Plaintiff alleges that she "sought out a meeting with Scott and arranged a conference call to reiterate her interest in the Project Manager position and explain her 'overwhelming qualifications.'" *Id.* Plaintiff alleges that Scott told her that "she could submit an application to HR by close of business on February 28, 2020." *Id.* On February 27, 2020, Plaintiff alleges that she "used six hours of personal leave to complete her application for the Project Manager position." *Id.* She contends that she submitted her application at 10:00 a.m. on February 28, 2020. *Id.* Plaintiff goes on to state that "less than two hours after she submitted her application, Akata selected Duran for the position." *Id.* Furthermore, on March 2, 2020, Plaintiff alleges that Scott called her and instructed her to train Duran. *Id.*

Plaintiff further alleges that as a result of Duran's "admitted lack of qualifications, he remained inept and incapable of performing the tasks of Project Manager, and as a result, Plaintiff was forced, yet again, to perform the duties of Project Manager."[3] *Id.* at 9.

Plaintiff alleges that following Duran's promotion "she continued to make only $16.34 an hour, whereas Duran's base salary was $65,000." *Id.* at 11. She contends that Duran was "given a Dodge Ram truck for company and personal use, acquired more leave time than Plaintiff had ever been allotted in the four years she worked at Akata, and he received three weeks of paid leave, while she only had 3.12 hours accrued per pay period, which if not used by the end of the year, only added 2 weeks of paid leave." *Id.* Plaintiff also alleges that after Duran's promotion, "Akata gave a newly hired grass cutter, Ethan Smith, a raise to $17.00 an hour, which was $0.66 more than Plaintiff's hourly rate." *Id.* at 12.

---

[3] Plaintiff also goes into extensive details about the lack of qualifications of Duran and the times in which the company received complaints about Duran. ECF. No. 1 at 8–11.

Plaintiff alleges that after her July 2019 and January 2020 complaints "fell on deaf ears," she had "no choice but to file her Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) on May 6, 2020." *Id.*

**B. Procedural History**

On May 6, 2020, Plaintiff filed her Charge of Sex Discrimination and Retaliation with the EEOC. ECF No. 1 at 2. On June 21, 2021, the EEOC issued a determination in Plaintiff's favor, finding cause to believe that Akata failed to promote Plaintiff because of her sex. *Id.* On June 29, 2021, Plaintiff submitted a proposal of settlement to the EEOC, but on August 18, 2021, the EEOC issued a Notice of Failure to Conciliate. *Id.* Plaintiff subsequently received a Notice of Right to Sue from the EEOC on August 18, 2021. Plaintiff's Complaint was filed within 90 days of her receipt of her Notice of Right to Sue. *Id.* Defendant filed a Partial Motion to Dismiss the Complaint on February 18, 2022. ECF No. 25.

**II.   STANDARD OF REVIEW**

Akata moves to dismiss Counts III, V and VI of the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 25. A motion to dismiss under 12(b)(6) "test[s] the adequacy of a complaint." *Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 660 (D. Md. 2011) (citing *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008)). Motions to dismiss for failure to state a claim do "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Prelich*, 813 F. Supp. 2d at 660 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows

6

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of the plaintiff's claims, the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Indeed, the Court need not accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). The Court should not grant a motion to dismiss for failure to state a claim unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)).

## III.   DISCUSSION

Defendant argues that Plaintiff's allegations do not support a claim for retaliation because her Title VII and MFEPA claims (Counts III and VI) are based on work she performed before she engaged in any alleged protected activity and that Plaintiff cannot establish that Akata took any materially adverse action against her. Defendant also alleges that plaintiff has failed to establish that a causal relationship existed between her alleged protected activity and the alleged adverse action. ECF No. 25. Finally, Defendant argues that Plaintiff's sex-based wage

discrimination claims under Maryland Law (Count V) is partially time-barred.[4] The Court will first take up the issues pertaining to Plaintiff's retaliation claims.

### A. Retaliation Under Title VII and MFEPA (Counts III and VI)

"To establish a prima facie case of retaliation under Title VII, a plaintiff must prove '(1) that she engaged in a protected activity,' as well as '(2) that her employer took an adverse employment action against her,' and '(3) that there was a causal link between the two events.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005)). The analysis for Plaintiff's state law claim for retaliation is "judged under the same standards as Title VII." *Crockett v. SRA Int'l*, 943 F. Supp. 2d 565, 576 n.6 (D. Md. 2013). Plaintiff has satisfied her pleading burden at this stage of the litigation for her retaliation claim under Title VII and MFEPA.

An employee may satisfy the first element by showing that she opposed a practice that Title VII prohibits. "An employee is protected when she opposes not only ... employment actions actually unlawful under Title VII but also employment actions [she] reasonably believes to be unlawful." *Boyer-Liberto*, 786 F.3d at 282 (internal citation and quotations omitted) (ellipses in original). Here, Plaintiff alleges that she "engaged in a protected activity in July 2019 when she complained to Human Resources that Ratliff refused to advance her beyond her position of General Clerk, and that Ratliff told her to stay in her place as a woman clerk." ECF No. 1 at 15. Plaintiff also alleges that she "engaged in a protected activity in January 2020 when she submitted a written statement to COO, Scott, describing Ratliff's sexist and discriminatory

---

[4] In Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss, and for the first time, Defendant alleges that Plaintiff's wage claim under Count II is time barred prior to July 11, 2019. ECF No. 28 at 5. Stating that 42 U.S.C. § 2000e-5(e)(1) provides that "the lookback period for alleged violations of Title VII is three hundred days prior to the filing of the Charge, or here, July 11, 2019." ECF No. 28 at 5. While the Defendant is correct, Defendant failed to raise this defense in their answer or in their Motion to Dismiss and has therefore waived the defense.

actions." *Id.* Individually, and certainly together, these are sufficient to satisfy the first element of the claim.

"Retaliatory actions need not 'affect the terms and conditions of employment[.]'" *Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)). Rather, a plaintiff can satisfy the second element by "show[ing] that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *See Evans v. Int'l Paper Co.,* 936 F.3d 183, 195 (4th Cir. 2019) (quoting *Burlington*, 548 U.S. at 68).

To establish the second element for her retaliation claim, Plaintiff alleges that "following her complaints of July 2019 and January 2020, she was forced to do the work of Project Manager without additional compensation, was passed over for the Project Manager position, and was forced to train a 'grossly underqualified' male for the position she had been performing." ECF No. 1 at 15. Based on these alleged acts, Plaintiff has met the second element of the claim. Plaintiff's allegation that she was passed over for promotion to the Project Manager position because of her complaint is plausible. Plaintiff has alleged that Akata was in search of, and did, hire a male for the position who she believes to be less qualified than she is, particularly where, as she alleges, she had already been performing the Project Manager duties. Such actions may well have dissuaded a reasonable worker from making or supporting a charge of discrimination in the first instance.[5]

---

[5] In Defendant's reply to Plaintiff's Response to Defendant's Motion to dismiss they assert that the position was offered to Duran on February 28, 2020, at 9:51a.m., prior to Plaintiff's application being submitted. ECF No. 28 at 4. However, Plaintiff asserts that on February 11, 2020, she "spoke with chief people officer, Keith McMorris, who told her she should not apply because he 'could not justify the promotion for someone who was just a general clerk.'" ECF No. 1 at 6–7. Additionally, on February 14, 2020, Plaintiff alleges that "Nathan Duran received a call from Scott who asked him to apply for the project manager position; and that Duran was just a 'ceremonial support

Finally, Plaintiff alleges that "just one month after her complaint in January 2020, she was passed over for the Project Manager Position." ECF No. 1 at 15. This is sufficient to find a causal connection between the alleged protected activity and the alleged adverse action. *See Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989) (holding that proof that an employer fired an employee three months after the employee filed a charge of discrimination sufficed to state a prima facie case of causation).

Accordingly, the Court denies Defendant's Motion to Dismiss with respect to Counts III (Title VII Retaliation) and VI (MFEPA Retaliation).

### B. Sex-based Wage Discrimination Under Maryland Law (Count V)

Defendant moves to dismiss Count V based on its assertion that the claim is partially time-barred. There is no dispute that Plaintiff filed her discrimination charge with the EEOC on May 6, 2020. Plaintiff, in her reply brief to Defendant's Motion to Dismiss, indicates that she does not seek any relief for any alleged discrimination prior to May 6, 2018. ECF No. 27 at 8. Maryland has a two-year statute of limitations on claims brought pursuant to Title 20 of MFEPA. Md. State Gov't Code Ann, § 20-607(b) (liability may accrue "for up to 2 years preceding the filing of the [charge]."). Since Plaintiff does not seek relief for any alleged discrimination prior to May 6, 2018. Defendant's Motion to Dismiss with respect to Count V is moot.

---

assistant,' which primarily involved setting up chairs and audio-visual equipment." ECF No. 1 at 7. Even assuming Defendant did indeed offer Duran the position prior to receiving Plaintiff's application, Plaintiff alleges that Scott told her "she had until the close of business on February 28, 2020, to apply." ECF No. 1 at 8. Offering the position to someone else, a male, before the indicated deadline, would tend to indicate that Akata never intended to consider Plaintiff for the position. Therefore, as alleged, these facts are sufficient to meet the second element. Additionally, for this reason, Plaintiff's Motion for Leave to File Surreply is moot.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss with respect to Counts III and VI is **DENIED**, Defendant's Motion to Dismiss with respect to Count V is **MOOT**.  Plaintiff's Motion for Leave to File Surreply is **MOOT**, and Defendant's Motion to withdraw as attorney as to Jillian Hart is **GRANTED**. A separate Order shall issue.

Date: <u>September 6, 2022</u>                                              <u>    /s/                                        </u>
                                                                                   GEORGE J. HAZEL
                                                                                   United States District Judge